United States District Court
Eastern District of Texas

| | |
|---|---|
| **Gustavo Andre Sanchez**, | Case No. |
| Plaintiff, | |
| v. | |
| **Experian Information Solutions, Inc.**, | |
| Defendant. | |

## Complaint and Jury Demand

Plaintiff Gustavo Andre Sanchez brings this Complaint and Jury Demand against Defendant Experian Information Solutions, Inc., and states the following allegations and claims for relief:

## Introduction

1.  The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

1

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("**CRAs**").

4.      These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage or employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. 1681 et seq. (the "**FCRA**"),[1] federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers. The FCRA sets forth this and many other requirements for CRAs' operations.

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

6.     This action seeks compensatory, statutory, and punitive damages, costs of suit and reasonable attorneys' fees for the Plaintiff resulting from Defendants' failures to abide by the requirements of the FCRA as more fully described below.

## Parties

1.     Plaintiff, Gustavo Andre Sanchez, resides in Houston, Texas.

2.     Plaintiff is a consumer as defined by Section 1681a(c) of the FCRA.

3.     Experian Information Solutions, LLC ("**Experian**") is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis'' as defined by Section 1681a(p).

## Jurisdiction

4.     This lawsuit being brought pursuant to the FCRA presents a federal question and as such, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq*.

5.     Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## Factual Allegations

### Summary of the Fair Credit Reporting Act

6.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

7.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...."[2]

8.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[3]

---

[2] 15 U.S.C. 1681(b).

[3] 15 U.S.C. 1681e(b).

## Processing of Credit Information

9.   Experian regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others.

10.   These sources are known as **"furnishers"** within the credit reporting industry and under the FCRA.

11.   Experian collects information from thousands of furnishers, including Affirm, Inc.

12.   The process by which Experian receives, sorts, and stores information is largely electronic.

13.   Furnishers report credit information to Experian through the use of coded tapes that are transmitted to Experian on a monthly basis through software known as Metro 2.

14.   Experian takes the credit information reported by furnishers and creates consumer credit files.

15.   Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

16.   Experian knows that different consumers can have similar names.

17.   Experian knows that different consumers can have similar social security numbers.

18.   Experian knows that different consumers with similar names can also have similar social security numbers.

19.   Experian matches tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information Experian maintains about the consumer in the consumer's credit file or files.

20.   Experian accomplishes this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

21.   Sometimes Experian's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

**Experian's Chronic Mixed File Problem**

7.   Mixed files are chronic inaccuracies at Experian and Experian has known about this problem for almost four decades.[4]

8.   Mixed files have been the subject of a regulatory enforcement action, attorney general investigations and of hundreds, if not thousands, of consumer complaints and litigation.[5]

---

[4] *See e.g., Thompson v.. San Antonio Retail Merchants Ass'n*, 682 F..22d 509 (5th Cir. 1982).

[5] *See e.g., Alabama v. Trans Union*, Civ. No. 92-C-7101 (N.D. Ill. Oct. 16, 1992) (Consent Order); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996) (consumer reporting agency improperly mixed father's credit information into son's credit file).

9.      In the mid-1990's, the Federal Trade Commission and various state attorney generals' offices[6] charged the nationwide CRAs with violations of the FCRA.

10.     The government enforcement actions required Experian to improve its procedures and prevent mixed files.[7]

11.     Experian agreed to maintain reasonable procedures to avoid: (ii) including a consumer report information identifiable as pertaining to a consumer other than the consumer for whom a permissible purpose exists as to such report;; and (iii) displaying files identifiable as pertaining to more than one consumer in response to a subscriber request on one consumer.

12.     Further, the CRAs agreed to prevent reporting to subscribers that credit information pertains to a particular consumer unless the CRA has identified such information by at least two of the following identifiers: (i) the consumer's name;; (ii) the consumer's social security number;; (iii) the

---

[6] Including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington.

[7] *See FTC v. TRW, Inc.*, 784 F.Supp. 361 (N.D. Tex. 1991))((amended by N.D. Tex. Jan. 14, 1993) (agreed order amending consent order); *TRW, Inc. v. Morales*, CV-3-91-1340-H (N.D. Tex.. Dec.. 10,, 1991); *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 FTC 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996); and *Alabama v. Trans Union, Corp.*, CV-92C7101 (N.D. Ill. Oct. 26, 1992).

consumer's date of birth; (iv) the consumer's account number with a subscriber or a similar identifier unique to the consumer.

13. For public record information, in the event the public record information does not include at least two of the above - described personal attributes, Experian agreed to identify the public record information by the consumer's full name (including middle initial and suffix, if available) together with the consumer's full address.

14. The CRAs have been defendants in mixed file related FCRA lawsuits for decades.[8]

15. One of the earliest mixed file cases, *Thomas v. Trans Union*, resulted in a $1.3 million verdict against Trans Union in 2002.[9]

16. In 2007, Angela Williams sued Equifax in Florida and alleged Equifax mixed her file with another consumer with a similar name. The jury found in favor of Angela Williams and entered a verdict against Equifax for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive

---

[8] Plaintiff's Complaint, ¶¶ 25-26. *See e.g.*, *Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013); *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008); *Thomas v. Trans Union*, Case No. 3-00-01150 (D. Or. 2002); *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) (Trans Union improperly mixed narcotic trafficker's OFAC criminal alert into innocent consumer's credit file).

[9] *Thomas v. Trans Union*, Case No. 3-00-01150 (D. Or. 2002).

damages.[10]

17.   In July of 2013, Judie Miller sued Equifax in Oregon and alleged that
Equifax mixed her file with another consumer who had a different social
security number, date of birth and address. The jury found in favor of Ms.
Miller and entered a verdict against Equifax for over $18 million,, including
$180,000.00 in actual damages and $18.4 million in punitive damages.[11]

18.   Experian is aware of these verdicts.

19.   In 2012, New York Attorney General Eric T. Schneiderman launched an
investigation into Experian, Trans Union and Equifax after all three agencies
were the subject of numerous complaints about errors on state residents'
credit reports, including mixed files, and the onerous process to fix them.

20.   Part of the NYAG's focus was on the problem of mixed credit files.

21.   This three year long investigation ultimately culminated in a Settlement
agreement between the NYAG and the CRAs.[12]

22.   Through this investigation, Experian "produced a substantial volume of
documents and information to the NYAG."[13]

---

[10] *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008).

[11] *Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013).

[12] *In the Matter of Investigation by Eric T. Schneiderman of Experian, Equifax and
Trans Union*, Settlement Agreement, dated March 8, 2015 (the "**NYAG Settlement
Agreement**").

[13] NYAG Settlement Agreement, at 7.

23.   The NYAG and the CRAs also met on multiple occasions to discuss the

concerns raised by the NYAG.[14]

24.   Among the concerns raised by the NYAG, were concerns about mixed files

which the NYAG Settlement Agreement describes as follows:

> Credit report errors generally arise due to incomplete or incorrect
> information provided by furnishers or consumers; fraud and identity theft;
> and, in some cases, through the CRAs' processes of matching information
> provided by furnishers to an individual consumer's credit files. For
> example, when consumers have similar names and share other identifying
> information such as an address, some or all of the credit information of one
> consumer can become "mixed" into the file of another consumer.
> Consumers may not be aware that their credit information has become
> mixed with another person's credit information.
>
> The CRAs employ sophisticated algorithms for matching the data
> submitted by furnishers to the credit files of individual consumers. The
> matching systems use various combinations of identifying information such
> as name, address, and social security number to match the credit data with
> an individual consumer's credit files. In order to take into account minor
> errors and omissions made by consumers and data furnishers, the matching
> systems do not require exact matches for all of the various identifying
> items. Thus, a CRA's matching system might, for example, match reported
> credit information to a particular consumer even where the reported social
> security number does not match all nine digits of the consumer's social
> security number, where several other identifying items are an exact match.
> The flexibility in the CRAs' matching system can benefit consumers by
> ensuring that positive credit information is not omitted from a consumer's
> file based on minor omissions or errors by the consumer or creditor in
> recording the consumer's identifying information. On the other hand, the
> flexibility in the matching system may, in certain circumstances, lead a
> CRA to erroneously assign the credit information of one person to another
> person's credit file, creating a "mixed file."[15]

---

[14] *Id*.

[15] NYAG Settlement Agreement, at 4-5.

50.    As explained further below, it was exactly these types of matching

algorithms employed by Experian which caused Plaintiff's credit file to be

mixed.

51.    While the CRAs denied any wrong doing they agreed to make various

changes to their practices.[16]

52.    Among other things, the CRAs, including Experian, agreed to the following:

The CRAs shall implement an automated process to share relevant
information about consumers who dispute information contained in their
credit reports when a CRA confirms that a consumer's credit file
information was mixed with that of another identified consumer (hereafter
referred to as a "Confirmed Mixed File"). The CRAs shall develop and
share best practices for sharing Confirmed Mixed File information among
the CRAs, which shall include, but are not limited to, the following actions:

i.    Upon receipt of notice of a Confirmed Mixed File from another CRA,
the receiving CRAs shall: (a) conduct a reasonable investigation into
whether the disputed information is associated with the affected consumer
in the CRA's credit database; and (b) take reasonable steps to avoid
reporting any indicative information or tradelines deemed inaccurate
because they belong to another identified consumer.

ii.    The CRAs shall analyze their shared data on Confirmed Mixed File
information and other data concerning the manner of reporting tradelines
and indicative information to determine other appropriate actions, if any,
that should be taken to reduce the incidence of Confirmed Mixed Files.

iii.    The CRAs shall develop guidelines and procedures for
communicating with consumers about mixed files and shall create
educational content about mixed files generally, as part of the consumer
education enhancements in Sections III.B.7.d and III.C.1.[17]

---

[16] *Id*. at 7-8.

[17] NYAG Settlement Agreement, at 18-19.

53.   As a result of the NYAG investigation and NYAG Settlement Agreement, on March 13, 2015, the CRAs, acting through their lobbyist, the Consumer Data Industry Association (the "**CDIA**"), issued a public statement concerning the reporting of public records, such as civil judgments and state and federal tax liens on consumer credit reports.[18]

54.   According to Attorney General Schneiderman: The pact "is a good sign that the reporting agencies are <u>finally</u> willing to step up their game and respond to the needs of hardworking consumers and their families." "Credit reports touch every part of our lives. They affect whether we can obtain a credit card, take out a college loan, rent an apartment, or buy a car – and sometimes even whether we can get jobs." "The nation's largest reporting agencies have a responsibility to investigate and correct errors on consumers' credit reports. This agreement will reform the entire industry and provide vital protections for millions of consumers across the country," Schneiderman said. [19]

55.   According to Experian's lobbyist, Stuart Pratt of the CDIA: "This dialogue with a state attorney general [gave] us the chance to have a dialogue with

---

[18] Statement Consumer Data Industry Association, dated March 13, 2017 (the "**CDIA Statement**").

[19] *Credit-reporting agencies agree to overhaul*, http://www.reuters.com/article/usa-creditreporting/credit-reporting-agencies-agree-to-overhaul-idUSL4N0WB23Z20150309, last viewed on October 2, 2017.

each other and work on details on how we can proactively pursue changes to our practices."[20]

56.     There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Experian to match credit information to a particular consumer's credit file.

57.     The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Experian.

58.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to Experian.

59.     These rules also determine which credit files are merged to create a complete consumer report.

60.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

---

[20] *Credit reporting agencies unite to transform reporting and resolution practices*, https://www.lexology.com/library/detail.aspx?g=cfe25111-0ed7-4fb3-8878-76b73863c033, last viewed on October 2, 2017.

61.   Despite Experian's long-standing and specific knowledge of a mixed file problem Plaintiff's credit report still was generated by Experian containing information belong to another consumer.

### Reinvestigation Procedures

62.   When Experian receives a dispute from a consumer, Experian investigates the dispute using an automated browser-based system called the Online Solution for Complete and Accurate Reporting ("**e-OSCAR**"). This system was designed to provide furnishers with an online solution for processing consumer disputes.

63.   Through e-OSCAR, Experian sends to the furnisher an Automated Credit Dispute Verification ("**ACDV**") which is supposed to include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute which the agency received from the consumer.

64.   Through this ACDV, Experian asks the furnisher to investigate the information in question and determine whether the information that it is reporting to the agency is correct, complete and verifiable.

65.   Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) Experian has on the consumer matches the indicative information maintained in the furnisher's

records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

66.   The furnisher is then supposed to return the ACDV to Experian with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

67.   If a furnisher chooses to verify the information it will check a box called "Verified As Reported." Once checked, this will instruct the consumer reporting agency that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

68.   If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

69.   Whenever a furnisher directs an agency to change information on a consumer's credit file, that furnisher affirms to Experian that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

**Plaintiff's Credit File and Consumer Reports**

70.   Plaintiff takes great pride in his good name and credit record, and works very hard to ensure that his bills are paid in full and on time every month.

71.   Sometime prior to September 2019, Experian began matching an Affirm, Inc., credit card account to Plaintiff's credit file (the "**Affirm Account**").

72.   Plaintiff is not and has never been a party to the Affirm Account and has no liability it.

73.   Plaintiff has disputed the accuracy of the Affirm Account with Experian. In his disputes, Plaintiff explained that the Affirm account does not belong to him.

74.   Experian sent the results of its reinvestigations to Plaintiff which informed Plaintiff that Experian did not delete the Affirm Account from Plaintiff's credit file.

75.   Plaintiff's Experian credit files contain or have contained information that did not belong or pertain to him.

76.   Plaintiff's Experian credit file also included inaccurate personal or indicative information.

77.   Plaintiff's credit files have been merged by Experian with the credit file or files of at least one other consumer or Experian has inaccurately mixed information from least one other consumer's credit file with Plaintiff's credit files.

78.   Experian's merging and matching algorithms have caused Plaintiff's credit files to be mixed with credit information and/or credit files belonging to someone other than Plaintiff.

79.   Within the two years previous to the filing of this Complaint, Experian prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d), pertaining to Plaintiff that contained misleading or inaccurate information which belonged to another consumer.

80.   Experian failed to maintain reasonable procedures to prevent Plaintiff's credit information and/or credit files from being mixed with the credit information and/or credit files of at least one other consumer.

81.   Experian knows that its database mixes credit information and credit files that should not be mixed.

82.   Experian has been sued by consumers and suffered judgments as a result of mixing consumer credit information and/or credit files.

83.   When Experian assembles consumer reports for its subscribers, it allows these subscribers to use only a partial list of personal identifiers to match data to the target consumer resulting in the inclusion of a broad range of credit information; information which may in some cases belong to another consumer.

84. Experian also fails to require an exact match of all digits of a consumer's social security number which may in some cases result in the inclusion of credit information which belongs to another consumer.

85. However, when consumers, like Plaintiff, request copies of their credit files, Experian requires a complete match of all personal identifiers, resulting in a narrower match of data for the consumer.

86. Consequently, Experian's own procedures for disclosing information to consumers (as they are required to do by the FCRA) tends to mask or conceal the problem of mixed files.

87. By concealing this information, Experian impairs the ability of consumers, like Plaintiff, to identify and dispute errors resulting from mixed credit information or credit files.

88. Experian has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and of her consumer reports.

89. Experian's failures to follow reasonable procedures are willful.

90. Within the last two years Plaintiff has requested a copy of his Experian credit files and did not receive all of his Experian credit files or all of the information contained in his Experian credit files.

91. Within the last two years Plaintiff has requested a copy of his Experian credit files and did not receive all of his Experian credit files or all of the

information which Experian included in credit reports it prepared and sold using Plaintiff's credit files.

92.   Within the last two years Plaintiff has applied for credit and those applications resulted in Experian creating and providing a consumer reports about Plaintiff to Plaintiff's potential creditors or to resellers that in turn provided the information to Plaintiff's potential creditors. The information contained within those reports included information related to consumers other than Plaintiff and information which was not disclosed to Plaintiff when he requested a copy of his Experian credit file.

93.   A consumer's right to dispute information contained in a consumer report is an important safeguard necessary to ensure accuracy. The legislative history of the FCRA rightly characterizes the dispute and correction process as "the heart of ... efforts to ensure the ultimate accuracy of consumer report."

94.   Within the two years previous to the filing of this Complaint, Experian prepared and distributed one or more consumer reports, as the term is defined by Section 1681a(d) of the FCRA, pertaining to Plaintiff that contained misleading, incomplete and/or inaccurate information tradelines belonging to other consumers.

95.   Within the two years previous to the filing of this Complaint, Plaintiff has been denied credit, credit opportunity and/or had other adverse action taken

against him as a result of Experian preparing consumer reports about Plaintiff which include the Affirm Account and other erroneous information.

96.    Each of these adverse actions and others cause Plaintiff considerable emotional distress, including frustration, embarrassment and humiliation.

97.    Experian has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and of his consumer reports.

98.    The failures of Experian to follow reasonable procedures are negligent and/or willful.

99.    Upon information and belief, Experian processed Plaintiff's disputes by sending ACDVs to Affirm.

100.   Upon information and belief, Affirm received and responded to those ACDVs.

101.   Other than sending an ACDVs to Affirm, Experian did nothing to investigate whether or not Plaintiff was in fact liable for the Affirm account.

102.   Plaintiff spent time disputing the inaccurate reporting with Affirm and Experian.

103.   The failures of Experian to correct this reporting has caused Plaintiff a great amount of anxiety, has impaired their ability to obtain credit or to obtain it on favorable terms.

## Claims for Relief

### FCRA Violations by Experian

70.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[21]

71.    Experian has actual knowledge, by and through numerous other consumer lawsuits, thousands of complaints filed with the Better Business Bureau ("BBB"), actions by the FTC and numerous state attorney generals, including Ohio, and through its own agreement following the NYAG Investigation to correct the procedures which caused Plaintiff's credit file to be mixed that problems exist with matching criteria causing unrelated consumer files to merge.

72.    Despite its actual knowledge of an ongoing and chronic mixed file problem, Experian merged Plaintiff's credit file with the credit file of another individual. Experian's matching criteria caused Plaintiff, a consumer with excellent credit, to be slandered, harmed and humiliated by being strapped with a defaulted loan thereby damaging his credit reputation and ability to acquire credit at the best terms available.

73.    Experian maintained sufficient information to conclude that certain tradelines and identifying information did not belong to Plaintiff and, therefore, should not be mixed with Plaintiff's credit file. Experian did not

---

[21] *See* 15 U.S.C. 1681e(b).

maintain sufficient information to conclude that the Flagstar Account actually belonged to Plaintiff but mixed that information into Plaintiff's credit files nonetheless.

74. Experian has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports.

75. Experian has failed to properly investigate Plaintiff's disputes on at least one occasion.

76. Experian has failed to disclose the complete contents of Plaintiff's credit file(s) to Plaintiff.

77. Experian has failed to provide Plaintiff with the information contained in his Experian credit file(s).

78. Plaintiff has suffered damages, including the denial or inability to obtain credit and various forms of emotional distress, including frustration, confusion, anger, depression and a general feeling of helplessness, as a result of the actions and inaction of Experian.

79. Plaintiff's actual damages include both pecuniary and non-pecuniary damages.

80. Plaintiff has been denied credit, has suffered financial loss, delay in obtaining approval for a credit, loss of credit opportunity, out-of-pocket expenses and time expended in disputing errors.

81.   Plaintiff has suffered emotional distress, pain and suffering or humiliation, loss of sleep, nervousness, frustration, mental anguish over credit report, injury to her reputation, and injury to sense of well being.

82.   Others can corroborate the emotional distress suffered by Plaintiff.

83.   Experian's failure to prevent mixed credit files of they type described herein (along with other FCRA violations) caused and continues to cause Plaintiff emotional distress, impaired Plaintiff's ability to obtain credit and has damages his credit scores.

84.   Plaintiff has also spent time attempting to educate himself about these issues and attempting to have Experian's inaccurate reporting corrected.

85.   It distressed Plaintiff to learn that Experian had mixed his credit data with derogatory credit data belonging to another consumer.

86.   It distressed Plaintiff to know that his credit reputation had been harmed and that she risked possible future embarrassment when seeking credit.

87.   It distressed Plaintiff to know that his creditors (who view his credit history on a regular basis to make decisions about new credit or more favorable terms on existing credit) and potential creditors who might offer his credit would have seen this inaccurate information and incorrectly concluded that he was not credit worthy.

88.   Experian has negligently violated Section 1681e; alternatively Experian has willfully violated Section 1681e.

89.     Experian has negligently violated Section 1681i; alternatively Experian has willfully violated Section 1681i.

90.     Experian has negligently violated Section 1681g; alternatively Experian has willfully violated Section 1681g.

91.     Plaintiff has suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## Jury Demand

Plaintiff demands trial by jury.

## Request for Relief

Plaintiff respectfully requests that the Court grant any and all of the following relief: (a) actual damages; (b) statutory damages in an amount to be determined at trial; (c) punitive damages in an amount to be determined at trial; (d) costs and attorney fees; and (e) any other relief the Court deems just and proper.

Respectfully submitted,

*/s/James Foley*
James Foley
James Foley PLLC
4116 W. Vickery Blvd #103
Fort Worth, TX 76107
(817) 475 2102
james@jamesfoleypllc.com

Guerino Cento
CENTO LAW
5666 Carrollton Avenue
Indianapolis, IN 46220
(317) 908-0678
cento@centolaw.com